FILED

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

97 SEP 29  PM 3: 55

U.S. DISTRICT COURT
N.D. OF ALABAMA

BETTYE JEAN CALLENS, BETTY }
B. GRANT, REOLA WALLACE, }
}
    Plaintiffs, }
}     CASE NO. CV 95-B-3201-S
}
v. }
}
COOPER GREEN HOSPITAL, }
JEFFERSON COUNTY PERSONNEL }
BOARD, }

ENTERED

SEP 2 9 1997

    Defendants.

## MEMORANDUM OPINION

Currently before the court are the motions of defendants Cooper Green Hospital and the

Jefferson County Personnel Board for summary judgment. Upon consideration of the record, the

submissions of the parties, the argument of counsel, and the relevant law, the court is of the

opinion that the defendants' motions are due to be granted.

This dispute arises out of a reorganization plan that resulted in a reduction in force at

Cooper Green Hospital. In implementing the reduction in force, plaintiffs allege that defendants

discriminated against them on the basis of their race and sex in violation of Title VII of the Civil

Rights Act of 1964, as amended; 42 U.S.C. §§ 1981 and 1983, and the Fourteenth Amendment

of the United States Constitution.

### FACTUAL SUMMARY

Cooper Green Hospital operates as a department of the Jefferson County government.

(Aff. of Antoinette Smith Epps, Ex. A of Defendant Cooper Green's Evidence in Supp. of Mot.



at p. 1[1]).  In the Fall of 1993, Cooper Green Hospital proposed a reorganization of certain

departments of the hospital in an attempt to reduce costs, increase revenue, and shift the

hospital's focus to increased outpatient care and decreased inpatient care.  (*Id.* at p. 2).      In

April of 1994, the Jefferson County Commission formally implemented the reorganization plan

that would effect a reduction in force in the hospital's nursing department.  (Pl.'s Ex. 2 at ¶. 138-

139).  The Jefferson County Personnel Board approved the reduction in force and completed the

necessary steps to finalize the reorganization.  (Exs. 9-13 of Pls.' Evidentiary Submission in

Resp. to Def.'s Mot.[2]).  Plaintiffs are African-American females employed in the nursing

department of Cooper Green Hospital.  (Compl. at ¶¶ 3-5).  Pursuant to the reorganization,

plaintiffs were notified of the elimination of their positions and offered lower grade nursing

positions.  (Pls.' Exs. 13, 14, and 18).

In carrying out the reduction in force, the defendants were subject to the guidelines

contained in Section 23 of the Enabling Act[3] and Rule 5.7 of the Rules and Regulations of the

---

[1] Hereafter, Def. Cooper Green's Ex. A.  Defendant Cooper Green Hospital has submitted
evidence in support of its motion for summary judgment.  This evidence is presented as Exhibits
A through R.  Hereafter, these Exhibits will be referred to as Def. Cooper Green's Ex., and will
state the letter of the relevant exhibit and the page number, where applicable.

[2] Hereafter, Pls.' Ex. 2.  Plaintiffs' Evidentiary Submission in Response to Defendant's
Motions for Summary Judgment contains Exhibits marked 1-30. These exhibits will hereafter be
referred to as Pls.' Ex., followed by the exhibit number and the page number, where applicable.

[3] Plaintiffs argue that, in the context of this case, Alabama law only permits a reduction-in-
force where the municipal governing body declares a crisis involving "extreme economic
conditions."  Pls' Resp. to Defs.' Motion for Summary Judgment at p. 2.  Plaintiffs cite the court
to Section 23 of the Personnel Board Enabling Act and to Personnel Board Rule 5.7 (Pls' Exs. 30
and 31).  This argument misstates the law.  The court agrees with the defendants that the
language contained in Section 23 of the Enabling Act allows for a reduction in force "whenever
it is necessary because of lack of work, lack of funds or whenever it is advisable in the interest of
economy to reduce the staff of any department or agency of the counties[.]"

Personnel Board of Jefferson County.  (Pls.' Ex. 8 at p. 1; *See also* Pls.' Exs. 30-31).  The

Personnel Board's Rule 5.7 directs that any layoffs of permanent employees be based on the

employee's seniority within each classification.  (Pls.' Ex. 31 at (c)).  The Rule also provides that

a senior employee whose position is abolished may "bump" an employee in a lower classification

or position if the senior employee is qualified to perform the duties of the lower position.  (*Id.* at

(e)).  Overall departmental seniority comes into play only if someone in a lower classification

faces layoff in favor of someone with less departmental seniority.  (*Id.* at (f)).  Employees who

lose their positions also have the options of transferring to any vacant lower level position or

resigning and having their name placed on the layoff list for two years.  (Pls.' Ex. 8 at p. 2).

Applying these rules to the plaintiffs, the Personnel Board determined that the order of

seniority within the nursing department established Ms. Callens as the highest ranked employee

holding the position of Assistant Director of Nursing.  (Pls.' Ex. 7 at p.3-4).  Ms. Grant was

determined to be the second senior nurse holding the position of Assistant Director of Nursing.

(*Id.*)  Ms. Wallace was determined to be the most senior nurse holding the position of Nursing

Supervisor, a position that stood in a lower classification than that of Assistant Director of

Nursing.  (*Id.*)

Prior to March of 1994, plaintiff Betty Jean Callens worked at Cooper Green Hospital in

the position of Assistant Director of Nursing.  (Pls.' Ex. 6, Aff. of Bettye Jean Callens).  The

position of Assistant Director of Nursing, which was eliminated pursuant to the reorganization,

was a "grade 30" position.  (Pls.' Ex. 12)  In February of 1994, Ms. Callens was offered a

position as Director of Patient Services (formerly titled Nursing Supervisor), which was a "grade

28" position.  (Pls.' Exs. 12-13).  Although the demotion would result in a reduction in pay and

benefits, Ms. Callens accepted the position of Director of Patient Services.  (Def. Cooper Green's Ex. F at Index 2).

Prior to March of 1994, plaintiff Betty B. Grant also held the position of Assistant Director of Nursing at Cooper Green Hospital.  (Pls.' Ex. 6 at Aff. of Betty B. Grant).  In February of 1994, Ms. Grant, who had a lower seniority rating than Ms. Callens within their classification, was offered the position of Nursing Manager.  (Pls.' Ex. 14).  While Assistant Director of Nursing was a "grade 30" position, Nursing Manager (formerly titled Head Nurse) was only a "grade 26" position.  (Pls.' Exs. 12 and 14).  Despite the demotion, Ms. Grant accepted the position of Nursing Manager.  (Def. Cooper Green's Ex. G at Index 7).

Prior to March of 1994, Reola Wallace held the position of Nursing Supervisor (currently titled Director of Patient Services) at Cooper Green Hospital.  (Pls.' Ex. 18).  The Nursing Supervisor position was a "grade 28" position.  (Pls.' Ex. 12 at p.2).  In February of 1994, Ms. Wallace was offered the position of Nursing Manager, which was a "grade 26" position.  (Pls.' Ex. 18).  Ms. Wallace chose to retire in March of 1994 rather than accept the demotion to Nursing Manager.  (Def. Cooper Green's Ex. H at Index 19).  Although Ms. Wallace states that she did not want to retire early, she chose to do so upon hearing of the pending reorganization.  (Def. Cooper Green's Ex. H at p. 26).  By retiring early, Ms. Wallace hoped to retain "grade 28" retirement benefits rather than risk losing some of those benefits as a result of her demotion.  (*Id.* at p. 12).

## SUMMARY JUDGMENT STANDARD

Under FED. R. CIV. P. 56(c), summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that

4

there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The movant can meet this burden by presenting evidence showing there is no dispute of material fact, or by showing that the nonmoving party has failed to present evidence in support of some element of his case on which he bears the ultimate burden of proof. *Celotex,* 477 U.S. at 322-23; *see* FED. R. CIV. P. 56(a) and (b). Once the moving party has met its burden, Rule 56(e) "requires the nonmoving party to go beyond the pleadings and by . . . affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" *Celotex*, 477 U.S. at 324. Rule 56 (c) mandates the entry of summary judgment against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. *Celotex*, 477 U.S. at 322.

If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986) (citations omitted); *accord Spence v. Zimmerman*. 873 F.2d 256 (11th Cir. 1989). Furthermore, the court must "view the evidence presented through the prism of the substantive evidentiary burden," so there must be sufficient evidence on which the jury could reasonably find for the plaintiff. *Anderson*, 477 U.S. at 254; *Cottle v. Storer Communication, Inc.*, 849 F.2d 570, 575 (11th Cir. 1988). Nevertheless, credibility determinations, the weighing of evidence, and the drawing of inferences from the facts are the function of the jury, and therefore the evidence of the nonmovant is to be believed and all justifiable inferences are to be drawn in his favor. *Anderson*, 477 U.S. at 255.

5

The nonmovant need not be given the benefit of every inference but only of every reasonable inference. *Brown v. City of Clewiston*, 848 F.2d 1534, 1540 n.12 (11th Cir. 1988).

## DISCUSSION

In order to establish a prima facie case of discriminatory treatment in violation of Title VII where the plaintiff was terminated by a reduction in force, the plaintiff must show: (1) that she is a member of a protected class, (2) that she was terminated,[4] (3) that she was qualified for another position at the time of termination, and (4) that the employer intended to discriminate in failing to consider the plaintiff for another position. *Coutu v. Martin County Bd. of County Comm'rs*, 47 F.3d 1068, 1073 (11th Cir. 1995); *Wilson v. AAA Plumbing Pottery Corp.*, 34 F.3d 1024, 1028 (11th Cir. 1994). Plaintiffs maintain that the court should adopt the elements of a prima facie case of discrimination for reduction in force cases espoused in *Verbraeken v. Westinghouse Electric Corp.*, 881 F.2d 1041, 1045 (11th Cir. 1989). Although the third element of the *Verbraeken* prima facie case contains language slightly more favorable to plaintiffs than that of the fourth element in *Coutu*, the two elements are essentially the same requirement. *Compare Verbraeken*, 881 F.2d at 1045 ((3) by producing circumstantial or direct evidence by which a fact finder might reasonably conclude that the employer intended to discriminate on the basis of age in reaching the decision at issue) *with Coutu*, 47 F.3d at 1073 ((4) that the employer intended to discriminate in failing to consider the plaintiff for another position.)

In attempting to establish a prima facie case, plaintiffs contend that defendants intended to discriminate against them in failing to consider plaintiffs for another position. However, the

---

[4] Although plaintiffs were offered other jobs, they were "terminated" from the positions they held at the time of the RIF.

evidence reflects that the hospital and Personnel Board carefully considered the plaintiffs' existing positions and offered all of them new positions within the same department. (Pls.' Exs. 7-15, 18). Plaintiffs argue that they were demoted on the basis of their race and sex, while white nurses within the same department and male employees in other departments were not. The evidence shows, however, that the few white nurses in the nursing department, Karen Cremer, Sue Anderson, and Jean Riddle,[5] all had their "head nurse" positions eliminated. (Pls.' Ex. 7 at ¶. 3-4). Although Ms. Cremer and Ms. Anderson remained at the "grade 26" level after the reorganization, this was in accordance with the seniority scheme described in the Personnel Board's Rules and Regulations. (Pls.' Ex. 31). Defendants also offered the case manager or "grade 26" position to the more senior African-American head nurses Jacquelyn Smith and Delores Curry. (Def. Cooper Green's Ex. A at p. 3).

The evidence before the court does not support a finding of racial discrimination in failing to consider plaintiffs for another position. The defendants offered new positions to black and white nurses alike in order of descending seniority. Plaintiffs argue that defendants discriminated because it did not eliminate positions in the laboratory or reclassify a position in radiology to a lower pay grade. The fact that the laboratory and radiology departments were not subjected to a reduction in force has no bearing on whether plaintiffs have successfully established the fourth element of their prima facie case.[6]

---

[5] Ms. Riddle was ultimately not affected by the reorganization because of her voluntary departure from nursing management. (Def. Cooper Green's Ex. A at p. 4).

[6] The position in radiology which was originally proposed to be reclassified to a lower pay grade was held by an African-American male. (*See* p. 14 Pls.' brief). Thus, the hospital's failure to reclassify this position to a lower pay grade tends to support the defendants' contentions that the reorganization was not racially motivated.

Plaintiffs have failed establish by a preponderance of the evidence a prima facie case of racial and sexual discrimination in the reduction in force at issue. However, assuming that plaintiffs could be found to have established a prima facie case of discrimination, plaintiffs have failed to create a question of fact on the issue of whether defendants' articulated non-discriminatory reasons for the decisions made were pretext for illegal race or sex discrimination. The evidence before the court shows that defendants have articulated the following reasons for the reduction in force: to reduce cost, to increase revenue, and to shift the hospital's focus to increased outpatient care and decreased inpatient care. (Def. Cooper Green's Ex. A at p. 2). Therefore, defendants have stated legitimate, non-discriminatory reasons for the reduction in force.

Plaintiffs have failed to produce evidence to establish that the defendant's reasons were a pretext for discrimination. Contrary to plaintiffs' allegations, the court fails to discern any instance in which defendants departed from established procedure in effecting the reduction in force. In fact, all of the plaintiffs have conceded that the seniority system used in implementing the reorganization was correctly administered. (Def. Cooper Green's Exs. F at p. 58, G at p. 43, and H at p. 29). There is no evidence tending to show that defendants' true motivation behind the reduction in force was to discriminate against the plaintiffs on the basis of either their race or sex. The reduction in force affected blacks and whites alike, lending further credence to defendants' claims that the reorganization was a legitimate and fairly executed attempt to reduce costs at Cooper Green Hospital in keeping with the modern trend towards outpatient, rather than inpatient, treatment services.

The Supreme Court has held that the test for intentional discrimination in suits under §

1981 is the same as the formulation used in Title VII discriminatory treatment cases. *Brown v.*

*American Honda Motor Company, Inc.*, 939 F.2d 936, 949 (11th Cir. 1991); *Patterson v.*

*McClean Credit Union*, 491 U.S. 164, 185-187 (1989).[2] Furthermore, when § 1983 is used as a

parallel remedy for transgression of § 1981 and Title VII, the elements of the cause of action do

not differ from those discussed in evaluating the Title VII claims. *Whiting v. Jackson State*

*University*, 616 F.2d 116, 121 (5th Cir. 1980). Therefore, the court's treatment of plaintiffs'

Title VII reduction in force claims is dispositive of plaintiffs' § 1981, § 1983, and Fourteenth

Amendment claims.

**CONCLUSION**

Plaintiffs' evidence raises no genuine issue of material fact regarding their claims under

Title VII, § 1981, and § 1983. Accordingly, defendants' motions for summary judgment is due

to be granted. An Order granting defendants' Motions for Summary Judgment will be entered

contemporaneously with this Opinion.

**DONE** this 29th day of September, 1997.

SHARON LOVELACE BLACKBURN
United States District Judge

---

[2] Only claims of discrimination based on race are actionable under § 1981. *Johnson v. Railway Express Agency, Inc.*, 421 U.S. 454, 459 (1975); *Jones v. Alfred H. Mayer Co.*, 392 U.S. 409, 436 (1968).